H. J. Yarborough and Gladys E. Yarborough v. Commissioner.
H. Yarborough v. Commissioner
Docket No. 36570.
United States Tax Court
1952 Tax Ct. Memo LEXIS 36; 11 T.C.M. (CCH) 1112; T.C.M. (RIA) 52329; November 18, 1952
*36 Held, that of $1,857.50 which petitioners deducted on their joint income tax return for the year 1948 as debts which became worthless in that year, $7.50 did not become worthless in 1948 but became worthless in a prior year; held, further, that $1,850 which petitioner loaned W. E. Richburg in 1944 and for which he took his three promissory notes due in 90 days became worthless in 1948 and petitioner is entitled to deduct the $1,850 in that year as a worthless nonbusiness debt under Section 23(k)(4) of the Code. Donald V. Yarborough, Esq., 612 Texas Bank Bldg., Dallas, Texas, for the petitioners. Paul M. Newton, Esq., for the respondent. *37 BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1948 of $1,163.14. The deficiency is due to several adjustments which the Commissioner made in the income as reported on petitioner's return for the year 1948. None of these adjustments are contested except adjustment (c) which is explained in the deficiency notice as follows: "(c) It is held that you are not entitled in the year 1948 to a bad debt deduction on account of $1,850.00 advanced to William E. Richburg in the year 1944. This amount, therefore, is restored to taxable income. Debt of $7.50 of W. L. Oliphant was evidently bad prior to 1948. Total amount disallowed $1,857.50." Petitioner assigned this action of the Commissioner as error as follows: "5. The determination of the tax set forth in the notice of deficiency is based upon the following errors: "(a) In the Commissioner of Internal Revenue failing to allow for bad debts in the sum of $1850.00, same being loaned by H. J. Yarborough to William E. Richburg in the year 1944 and which is uncollectible. "(b) In the Commissioner of Internal Revenue failing to allow for bad debt *38 in the sum of $7.50, being money loaned to W. L. Oliphant." Findings of Fact The petitioners are husband and wife and reside in Dallas, Texas, and filed a joint return for the taxable year 1948 with the collector of internal revenue at Dallas, Texas. Petitioner H. J. Yarborough will hereafter be referred to as petitioner. In the year 1944, petitioner made loans to W. E. Richburg of Dallas, Texas, as follows: June
$ 500.00
July
750.00
August
600.00
Total
$1,850.00 Richburg executed his promissory notes for each of these loans payable to H. J. Yarborough within 90 days of the execution thereof. None of the notes provided for the payment of any interest. Richburg was a friend of Yarborough and was a candidate for the office of Justice of the Peace in Dallas, Texas. He needed the money which he borrowed from petitioner to help finance his campaign for the office but the loans were in no sense campaign contributions by Yarborough to Richburg's campaign fund. They were outright loans from Yarborough to Richburg. Richburg was elected to the office of Justice of the Peace but he has never paid the notes or any part of them. Petitioner made repeated demands on *39 Richburg for payment of the notes but Richburg paid nothing, always claiming that he had been unable to accumulate any money out of his salary with which to pay the notes. In 1948, payment of the notes became barred by the statute of limitations of Texas. Petitioner checked the records in Dallas County and could find nothing to indicate that Richburg owned any property upon which he could levy, even if he secured a judgment against Richburg. He learned that there were other judgments against Richburg which had not been collected. He did not bring any suit against Richburg prior to the running of the statute of limitations because he believed it would be useless to do so and would only add additional costs which would increase his loss. Petitioner's debt of $1,850 against Richburg evidenced by three promissory notes executed in 1944 became worthless in 1948. On May 2, 1947, petitioner sold to W. L. Oliphant, a lawyer in Dallas, a book for $7.50. Oliphant gave petitioner a check for $7.50 dated May 2, 1947, drawn on the Dallas National Bank of Dallas, Texas, in payment for the book. Oliphant died a few days after the book was purchased. This check was returned to petitioner by the *40 bank upon which it was drawn on May 12, 1947, marked "unpaid" on account of Oliphant having become deceased. Petitioner never collected anything on the check. The debt evidenced by the check to petitioner became worthless in 1947 and not in the taxable year 1948. Opinion BLACK, Judge: The applicable statute to the issue involved in the instant case is section 23 (k) (4) of the Code which reads: Sec. 23. DEDUCTIONS FROM GROSS INCOME. "In computing net income there shall be allowed as deductions: * * *
"(k) Bad debts. - * * *
"(4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." It is clear that the debt of $7.50 which petitioner held against W. L. Oliphant did not become worthless in the year *41 1948. We think the evidence shows that this debt became worthless in 1947 and the Commissioner was correct when he stated in his deficiency notice "Debt of $7.50 of W. L. Oliphant was evidently bad prior to 1948." The Commissioner is sustained in his disallowance of this $7.50 as a deduction in 1948. We think the Commissioner erred in his disallowance of the deduction of $1,850 which petitioner loaned to William E. Richburg in 1944. We think petitioner has sustained his burden of proof to show that this $1,850 debt became worthless in the year 1948. It is true, of course, as respondent contends in his argument that the running of the statute of limitations alone is not sufficient to prove that a debt became worthless in the year of the running of the statute of limitations. A taxpayer seeking such a deduction must prove more than that. Section 30.49 of Mertens Law of Federal Income Taxation, Vol. 5 says the following with reference to the running of the statute of limitations: "* * * As a general proposition, the running of the statute of limitations does not wipe out an obligation; the debt remains, but the right to sue thereon is barred if the debtor chooses to plead the statute. *42 In view of the debtor's option to plead or ignore the statute, it is clear that the creditor cannot himself determine that the debt is uncollectible by the mere running of the statute. Accordingly, it has been held that the fact that the debt is barred by the statute does not per se make a debt worthless. Of course, the barring of a debt by the statute may be a strong contributing factor in the determination of the worthlessness of a debt, especially where considered with other evidence. * * *" We think the above quotation correctly states the rule. In arriving at our conclusion that petitioner's debt against Richburg became worthless in the year 1948, we have considered more than the running of the statute of limitations. Both parties agree that the four-year statute of limitations of Texas had run by the end of the year 1948 against the indebtedness in question. But petitioner has shown that he relied on more than the mere running of the statute of limitations in concluding that his debt against Richburg became worthless in 1948. In explaining his efforts to collect from Richburg, petitioner testified as follows: "A. I have asked Mr. Richburg for this money on many occasions. *43 At the time the money was presented to him, he was making a campaign for Justice of the Peace and he needed money badly and he was under the impression, or stated that he was, that he would get some donations and he would be able to repay it in the latter part of the summer or the fall of 1944 and I asked him for the money and he stated that he had received no campaign contributions and he couldn't repay the money and then at intervals after that, up to now, I have tried to collect it. I tried to collect it in the following year after that in 1945 and I tried in '46, '47, '48 and even after that and without any success." Petitioner further testified: "A. I checked the tax records of Dallas County to see if he had any property subject to execution and on one or two occasions, when I tried to collect from him, I asked him what property he had, if he didn't have something he could sell to pay me and I had in mind then to find out if there was something that I could get by an execution, if I sued him." "Q. In your efforts to determine if there was any property on the tax rolls other than exempt property or homestead, did you find any evidence of ownership of any property other than *44 homestead?" "A. I couldn't find anything except what was exempt." * * *
"Q. Do you know of any way that you could have collected the money at any time up before the debt was actually barred by limitations?" "A. No. I don't. I would have done it, used any method, if I had known of any way to get it." Richburg, the debtor, also testified at the hearing and testified that he borrowed the money from Yarborough in 1944 and that he fully intended to repay the loan at the time he borrowed the money but that he had never been able to do so. During the course of Richburg's testimony, the following questions and answers occur: "Q. Are there any judgments against you unpaid at the present time?" "A. There is." "Q. Do you have any property subject to execution?" "A. Have nothing more than the house I live in and there's quite a bit against it." * * *
"Q. Have you been financially able to pay the debt?" "A. I have been financially embarrassed." We conclude on the strength of the foregoing testimony, coupled with the fact that the statute of limitations ran against the debt in 1948, that the debt became worthless in 1948 and petitioner is entitled to claim the deduction *45 in that year and the Commissioner erred in disallowing it. The debt was clearly a nonbusiness bad debt, rather than a business bad debt, and we so hold. However, counsel for respondent stated at the hearing that it really made no difference taxwise that the debt in question was a nonbusiness bad debt as distinguished from a business bad debt "Because," he said, "there were other capital gains and capital losses, [of the taxpayer] so it will not make any difference tax-wise." But be that as it may, we hold that the $1,850 in question was a "nonbusiness bad debt" within the meaning of section 23 (k) (4) of the Code. Decision will be entered under Rule 50.